UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                                        :

MICHAEL MAZZIO, MARGARET MAZZIO, :
ANTHONY MAZZIO, and MIKE'S HEAVY :
DUTY TOWING, INC., : 14-CV-616 (ARR) (MDG)
                                                                                        :
        Plaintiffs, : <u>NOT FOR ELECTRONIC</u>
                           : <u>OR PRINT PUBLICATION</u>
  -against- :
                           : <u>OPINION & ORDER</u>
ALAN KANE, :
                           :
        Defendant. :
                           :
------------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiffs bring this diversity suit against defendant Alan Kane alleging that he has violated an agreement not to compete with or solicit customers of their tow truck companies. Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(7). Defendant argues that plaintiffs have failed to join Bull Dog Transportation, Inc. ("Bull Dog"), an indispensable party that cannot be joined in this action without depriving the court of subject matter jurisdiction. Defendant also asserts that this action must be dismissed due to improper venue under Rule 12(b)(3) because New Jersey courts have exclusive jurisdiction over the claims in this suit. For the reasons set forth below, defendant's motion to dismiss is granted.

## BACKGROUND

Plaintiffs Michael Mazzio, Margaret Mazzio, and Anthony Mazzio (collectively, the "Mazzio Plaintiffs") are all residents of Queens, New York. Compl., Dkt. #1, ¶¶ 7-9. Plaintiff Mike's Heavy Duty Towing Inc. ("Mike's Towing") is a corporation organized under the laws of

1

the state of New York with its principal place of business in Brooklyn, New York. Id. ¶ 10. The Mazzio Plaintiffs are the sole shareholders of Mike's Towing. Id. ¶ 14.

Defendant Alan Kane is a resident of New Jersey. Id. ¶ 11. Kane is the founder and former owner of Bull Dog, a tow truck company organized under the laws of New Jersey with its principal place of business in Newark, New Jersey. Aff. of Alan Kane in Supp. of Mot. to Dismiss ("Kane Aff."), Dkt. #14, Ex. 1, ¶ 2 & Ex. A.

By a contract of sale dated October 16, 2010, Kane agreed to sell all of the shares of Bull Dog to Mike's Towing. Compl. ¶ 13; Kane Aff., Ex. B. The Mazzio Plaintiffs assert that they wanted to expand their towing operations into New Jersey in order to serve the interstate needs of Mike's Towing's customers. Decl. of Anthony Mazzio in Opp'n to Mot. to Dismiss ("Anthony Mazzio Decl."), Dkt. #11, ¶¶ 10-13; Decl. of Michael Mazzio in Opp'n to Mot. to Dismiss ("Michael Mazzio Decl."), Dkt. #12, ¶¶ 10-13. Following the sale, the Mazzio Plaintiffs became the sole shareholders of Bull Dog. Compl. ¶ 12.

In conjunction with the sale, on November 13, 2010, Kane entered into an employment agreement with Bull Dog. Kane Aff. ¶¶ 4-5 & Ex. C. The agreement provided that Kane would work as Bull Dog's General Manager for a five-year term and receive specified compensation and benefits. Kane Aff., Ex. C. The agreement identified Bull Dog as "the Company" that would employ Kane and identified Mike's Towing as a "Member Company" affiliated with Bull Dog. Id. at 1.[1] The employment agreement included a "Non-Solicitation of Customers" clause stating:

---

[1] The employment agreement also refers to another Member Company, Mike's Heavy Duty Towing NJ, Inc. ("Mike's Towing NJ"), which is a New Jersey corporation registered in October 2010, the same month as the contract for the sale of Bull Dog's shares. See https://www.njportal.com/DOR/businessrecords/ (last accessed June 24, 2014). The employment agreement is signed on one page by Michael Mazzio as president of Mike's Towing NJ and on another page by Michael Mazzio as president of Bull Dog. Kane Aff., Ex. C, at 8-9. Nevertheless, the first page of the employment agreement clearly identifies Bull Dog as "the Company" that is a party to the agreement with Kane, while Mike's Towing and Mike's Towing NJ are identified as "Member Companies." Id. at 1.

2

> Provided the Company has not breached its obligations to [Kane], [Kane] shall not, during his employment and for a period of two years after termination for any reason, directly or indirectly, solicit any customer of the Company or any Member Company in order to attempt to direct any such customer away from, or to do less business with, the Company or any Member Company.

Id. at 6. The employment agreement also included a venue provision specifying that "the courts located in the State of New Jersey" would have exclusive jurisdiction over "any action or proceeding concerning or arising out of the interpretation, enforcement and defense of the transactions contemplated by this Agreement." Id. at 7. Also on November 13, 2010, Kane executed a "Restrictive Covenant Agreement" which stated, in relevant part:

> I hereby agree that provided Bull Dog has not breached the terms of the sale or my employment contract until November 12, 2015, I personally, will not re-establish, re-open, be engaged in, nor in any manner whatsoever become interested, directly or indirectly, either as an employee, as owner, as partner, as member, as agent or as stockholder or officer of a corporation, or otherwise, in any business trade or occupation similar to the present business of Bull Dog Transportation, Inc. within twenty five (25) miles from 40 Frelinghuysen Avenue, Newark, New Jersey.

Kane Aff., Ex. D.

It is undisputed that the employment relationship between Kane and Bull Dog ended in late 2013, though the parties dispute the circumstances. Kane alleges that Bull Dog breached the employment agreement by demoting him from the position of General Manager, failing to pay his agreed-upon salary and benefits, and terminating his employment without cause in December 2013 without providing the separation package outlined in the agreement. Kane Aff. ¶¶ 8-10. Plaintiffs assert that Kane voluntarily quit his position at Bull Dog in September 2013, then returned to Bull Dog as an at-will employee between October 2013 and December 2013. Anthony Mazzio Decl. ¶¶ 16-17. In a letter on Bull Dog's letterhead dated December 9, 2013, plaintiff Anthony Mazzio wrote that Kane was "terminated from employment by Bull Dog

3

Transportation Inc. for cause" because he had refused to perform required job duties. Kane Aff., Ex. G.

On January 10, 2014, Kane brought an action in New Jersey Superior Court, Essex County, against Bull Dog, Mike's Towing, Mike's Heavy Duty Towing NJ, Inc., Michael Mazzio, and Anthony Mazzio. Kane Aff. ¶¶ 14-15 & Ex. I. In the state court action, Kane asserts claims for breach of the Bull Dog employment agreement and creation of a hostile work environment. Id. Kane also seeks a declaratory judgment establishing that the non-compete and non-solicitation clauses in the employment agreement and Restrictive Covenant Agreement are "null and void" because Bull Dog breached its obligations under the employment agreement. The defendants in the state court action have filed answers and the parties have proceeded to discovery. Affirmation of Patrick J. Dwyer, Dkt. #14.

Nineteen days later, on January 29, 2014, the Mazzio Plaintiffs and Mike's Towing brought this diversity action against Kane. Plaintiffs allege that Kane violated the Restrictive Covenant Agreement by attempting to solicit customers of Mike's Towing and Bull Dog to a competing towing company with which Kane is now affiliated. Compl. ¶¶ 16, 18-20.[2] Plaintiffs seek damages in excess of $100,000, together with attorneys' fees and costs.

Kane has moved to dismiss the complaint under Rule 12(b)(7), asserting that Bull Dog is a necessary and indispensable party whose joinder would deprive the court of diversity jurisdiction over this action. Kane also argues that the complaint should be dismissed under Rule 12(b)(3) because the venue provisions of the contract of sale and employment agreement establish that New Jersey courts have exclusive jurisdiction over the dispute.

---

[2] The complaint mistakenly describes the geographical scope of the Restrictive Covenant Agreement as "within twenty five miles from 40 Frelinghuysen Avenue, Newark, New York." Compl. ¶ 16. The Restrictive Covenant Agreement defines the restricted area as "within twenty five (25) miles from 40 Frelinghuysen Avenue, Newark, New Jersey." Kane Aff., Ex. D.

4

## DISCUSSION

**I.  Failure to Join an Indispensable Party**

Rule 12(b)(7) permits a party to move to dismiss a complaint based on the failure to join an indispensable party under Rule 19. "The party moving for dismissal for failure to join an indispensable party has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." City of N.Y. v. Milhelm Attea & Bros., Inc., 550 F. Supp. 2d 332, 353 (E.D.N.Y. 2008) (internal quotation marks omitted); accord Mattera v. Clear Channel Commc'ns, Inc., 239 F.R.D. 70, 74 (S.D.N.Y. 2006). In ruling on a motion to dismiss under Rule 12(b)(7), the court "may consider matters outside the pleadings." Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487, 495 (S.D.N.Y. 2002).

The court must engage in a two-step inquiry to determine whether Rule 19 requires the dismissal of an action for failure to join a party. First, as a threshold matter, the court must determine "whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a)." Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000). Under Rule 19(a)(1)(B), a party must be joined if:

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B).

If a party is required to be joined under Rule 19(a) but cannot be joined without depriving the court of subject matter jurisdiction, the court must proceed to the second step of the analysis

5

under Rule 19(b). "Rule 19(b) requires courts to consider whether, 'in equity and good conscience,' the party is one without whom the action between the remaining parties cannot proceed—or, in the traditional terminology, whether the absent party is 'indispensable.'" Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 132 (2d Cir. 2013). According to Rule 19(b), the court should consider factors including:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). "If the court determines that a party is indispensable, then the court must dismiss the action pursuant to Rule 19(b)." Viacom Int'l, 212 F.3d at 725.

In this case, defendant asserts that Bull Dog must be joined as a party under Rule 19. It is undisputed that Bull Dog cannot be joined without depriving the court of subject matter jurisdiction. Plaintiffs bring this suit under the federal court's jurisdiction to hear suits between citizens of different states. 28 U.S.C. § 1332. "A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State." Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998). Since Bull Dog is a New Jersey corporation and defendant Kane is a resident of New Jersey, the joinder of Bull Dog as a plaintiff would create a lack of complete diversity between the parties. Therefore, I must determine whether Bull

Dog is a necessary and indispensable party whose inability to be joined in this suit requires dismissal under Rule 19(b).

**A. Claims Regarding Solicitation of Bull Dog's Customers**

I find that Bull Dog is a necessary and indispensable party because plaintiffs are raising claims that properly belong to Bull Dog. Plaintiffs allege that defendant violated the Restrictive Covenant Agreement by soliciting Bull Dog's customers. Compl. ¶¶ 16, 20. The Restrictive Covenant Agreement specifically references Bull Dog and creates reciprocal obligations for Kane and Bull Dog. The agreement prohibits Kane from engaging in a business similar to Bull Dog within twenty-five miles of Bull Dog's location, as long as Bull Dog fulfills its obligations in the employment contract. If defendant has violated this agreement, Bull Dog is the party harmed by defendant's actions and the party with the right to seek recovery.

To the extent that plaintiffs also seek to enforce the non-solicitation provision of the employment agreement, this claim belongs to Bull Dog for the same reason. Bull Dog is a party to the employment agreement, and the relevant provision restricts Kane from soliciting Bull Dog's customers provided that Bull Dog has not breached the employment agreement. Under either of these theories of recovery, the claims regarding defendant's alleged solicitation of Bull Dog's customers belong to Bull Dog, the injured party. See Cook v. Toidze, 950 F. Supp. 2d 386, 391 (D. Conn. 2013) (finding claims belong to limited liability company where plaintiffs allege that defendants caused LLC to lose business and damaged its business relationships); Bartfield v. Murphy, 578 F. Supp. 2d 638, 647-48 (S.D.N.Y. 2008) (finding claims belong to LLC where plaintiff alleges that defendant solicited business from limited liability company and diverted business to his new company).

The Mazzio Plaintiffs, as Bull Dog's sole shareholders, cannot assert these claims in Bull Dog's absence. As a New Jersey corporation, Bull Dog is an "entity separate and distinct from its shareholders." Strasenburgh v. Straubmuller, 683 A.2d 818, 829 (N.J. 1996). Accordingly, "suits to redress corporate injuries which secondarily harm all shareholders alike are brought only by the corporation." Id.; accord Dimaria v. Goor, No. 09-CV-1011 (JG) (RML), 2010 WL 3923227, at *8 (E.D.N.Y. Sept. 30, 2010) (New Jersey law does not permit "claims by a shareholder asserting a harm done to the corporation"). In this case, the alleged injury is solicitation of Bull Dog's customers and interference with its business, which in turn causes financial harm to all of Bull Dog's shareholders equally. No evidence in the record suggests that the Mazzio Plaintiffs suffered injury in their individual capacities rather than in their capacities as shareholders.[3] Under New Jersey law, such a claim is characterized as a derivative claim on behalf of the corporation. See Hague v. Rica, 2008 WL 2329897, at *3 (N.J. Super. Ct. App. Div. June 9, 2008) (holding that plaintiff asserted derivative claim on behalf of LLCs, not individual claim, where "the wrong alleged, namely the taking of company monies, was a wrong to the companies, and [plaintiff] suffered no special injury not suffered by other [LLC] members").

The Mazzio Plaintiffs cannot bring derivative claims on behalf of Bull Dog without joining Bull Dog as a party to the suit. "In a derivative action, the corporation is an indispensable party in order, inter alia, to avoid the risk of double recovery were the corporation to bring a direct suit at a later date." Bartfield, 578 F. Supp. 2d at 645. Therefore, "courts appear unanimous in concluding that the party on whose behalf a derivative claim is brought is

---

[3] Plaintiffs try to frame their claims as personal by asserting that the Mazzio Plaintiffs purchased the stock in Bull Dog from Kane in reliance on his promise not to compete with the company. Compl. ¶¶ 16, 18. The record shows, however, that the payment to Kane for Bull Dog's shares came from Mike's Towing's account, not from the Mazzio Plaintiffs' personal funds. Reply Aff. of Alan Kane ("Kane Reply Aff."), Dkt. #15, Ex. 1, ¶¶ 4, 7 & Ex. A. To determine whether a plaintiff states an individual claim or a claim on behalf of a corporation, "courts examine the nature of the wrongs alleged in the body of the complaint, not the plaintiff's designation or stated intention." Strasenburgh, 683 A.2d at 830.

8

indispensable and one whose absence warrants dismissal." Id. at 650; accord Ross v. Bernhard, 396 U.S. 531, 538 (1970) (holding that in a derivative suit "[t]he corporation is a necessary party to the action; without it the case cannot proceed"); Cook, 950 F. Supp. 2d at 393 (holding that LLC is indispensable party in action asserting derivative claims); Weber v. King, 110 F. Supp. 2d 124, 133 (E.D.N.Y. 2000) (collecting cases holding that "the entity on whose behalf a derivative suit is brought is deemed an indispensable party").

I find, therefore, that Bull Dog is an indispensable party to this suit because plaintiffs assert injury to Bull Dog through the solicitation of its customers. These claims belong to Bull Dog and must be brought either as direct claims by Bull Dog or as derivative claims by its shareholders. Under either approach, the action cannot proceed in Bull Dog's absence and must be dismissed under Rule 19(b).

**B. Claims Regarding Solicitation of Mike's Towing's Customers**

Plaintiffs try to avoid this result by arguing that they are bringing claims only on behalf of Mike's Towing, not on behalf of Bull Dog. Plaintiffs assert that the Restrictive Covenant Agreement was "executed by Defendant for the benefit of the Mazzio Family and Mike's Towing." Michael Mazzio Decl. ¶ 26. Plaintiffs argue that Mike's Towing seeks redress in this suit for defendant's interference with its business and solicitation of its customers. Anthony Mazzio, as an officer and shareholder of Bull Dog, asserts that Bull Dog "waives any claims to being a party in this action." Anthony Mazzio Decl. ¶ 34. Therefore, plaintiffs argue, the joinder of Bull Dog is not required for this court to determine whether Mike's Towing is entitled to relief. Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Opp'n"), Dkt. #10, at 10.

At the outset, I note that plaintiffs' own pleadings assert claims on behalf of Bull Dog regarding the solicitation of its customers. Compl. ¶ 20. Even if the court were to dismiss those

9

claims and only consider claims regarding Mike's Towing, this suit cannot proceed. Mike's Towing cannot sue to enforce the Restrictive Covenant Agreement because it is not a party to the agreement. It is certainly plausible that, as plaintiffs allege, Mike's Towing derived a benefit from the Restrictive Covenant Agreement. Mike's Towing purchased Bull Dog in order to expand its business into New Jersey, so Mike's Towing, as Bull Dog's affiliate, would benefit from reduced competition near Bull Dog's location. Nonetheless, Bull Dog and Mike's Towing are separate corporate entities, each with their own rights and obligations. On its face, the Restrictive Covenant Agreement grants rights and obligations to Bull Dog, not to Mike's Towing.[4]

If Mike's Towing can assert a claim, it must be under the non-solicitation provision of the employment agreement. This provision bars defendant from soliciting customers of Bull Dog as well as its "Member Companies," including Mike's Towing. While Mike's Towing is not a party to the employment agreement, I assume <u>arguendo</u> that Mike's Towing can bring a claim to enforce the non-solicitation provision as a third-party beneficiary of the contract. I find, however, that Bull Dog would be an indispensable party in any such claim.

Under Rule 19(a)(B), Bull Dog is a necessary party since it has significant interests at stake in any action to enforce the non-solicitation provision. Bull Dog is a party to the employment agreement, and its performance under the agreement will necessarily be at issue. The non-solicitation clause expressly binds Kane only if Bull Dog "has not breached its obligations to Kane." Therefore, in order to resolve any claim that Kane solicited customers of

---

[4] The contract of sale also included a "Covenant Not to Compete" clause providing that, for three years following the closing, Kane would not "enter into or engage generally in direct competition" with Bull Dog within Bull Dog's "existing marketing area." Kane Aff., Ex. B, at 5-6. Mike's Towing, as the buyer in the contract of sale, is a party to this covenant. However, the covenant covers only a three-year period following the closing date on November 11, 2010. Kane was still working for Bull Dog in November 2013, even though the parties dispute whether he was working under his employment agreement or as an at-will employee. Therefore, this covenant does not cover the claims in this suit, and nothing in plaintiffs' complaint suggests they seek to raise claims under the contract of sale.

10

Mike's Towing, the court will need to determine what obligations were required of Bull Dog under the employment agreement and whether Bull Dog fulfilled those obligations. "It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party." Ryan v. Volpone Stamp Co., Inc., 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) (collecting cases); accord Delcon Constr. Corp. v. U.S. Dep't of Hous. & Urban Dev., 205 F.R.D. 145, 147 (S.D.N.Y. 2002) (finding company to be necessary party where "[t]he underlying contract to which [it] is a party will necessarily be at issue in this litigation"); Global Disc. Travel Servs., LLC v. Trans World Airlines, 960 F. Supp. 701, 707 (S.D.N.Y. 1997) ("As a direct party to the contract which is under dispute, [the company] is a necessary party to this litigation" under Rule 19(a)).

Bull Dog will be impeded from protecting these interests if it is not joined as a party. Even though all of Bull Dog's shareholders are plaintiffs in this action, and even though their interests are presumably aligned with Bull Dog's interests, their presence as individual parties is insufficient to protect Bull Dog's separate and distinct interests as a corporation. See Weber, 110 F. Supp. 2d at 128 (finding presence of all members of LLC in litigation insufficient to protect the LLC's interests because the LLC, like a corporation, is a separate legal entity).

Most significantly, proceeding in this action without Bull Dog leaves defendant at substantial risk of incurring multiple or inconsistent obligations. In order to prevail in this suit, plaintiffs will need to establish that Bull Dog fulfilled all of its obligations under the employment agreement and that the non-solicitation provision is binding on Kane. Meanwhile, in the pending New Jersey state action, Kane is seeking a declaratory judgment that the non-solicitation provision is unenforceable because Bull Dog breached the employment agreement. Both suits will therefore turn on the same contested issue. Defendant also faces the possibility that Bull Dog

could bring a separate suit to enforce its rights under the employment agreement and Restrictive Covenant Agreement. Kane is at risk of having multiple courts decide his rights and obligations under the employment agreement and potentially reach different conclusions, which is "precisely what Rule 19 seeks to avoid." Global Disc. Travel Servs., 960 F. Supp. at 709.

Having found that Bull Dog is a necessary party, I also find that Bull Dog is an indispensable party within the meaning of Rule 19(b). Numerous courts have held that a party to a contract at issue "is the paradigm of an indispensable party." Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991). An analysis of the Rule 19(b) factors demonstrates that any claim by Mike's Towing regarding the solicitation of its customers cannot "in equity and good conscience" proceed in Bull Dog's absence. Fed. R. Civ. P. 19(b).

Under Rule 19(b)(1), a judgment rendered in Bull Dog's absence runs a serious risk of prejudicing Bull Dog or Kane. For the reasons already discussed, both this case and the New Jersey state court action will turn on a determination of whether Bull Dog breached the employment agreement. Bull Dog will be prejudiced if the court decides this issue without its presence in this suit, and both Bull Dog and Kane will be significantly prejudiced if the courts reach inconsistent decisions and leave their rights and obligations uncertain. See Bartfield, 578 F. Supp. 2d at 651 (finding LLC to be indispensable party because if it is not joined it would be unable to assert its interests "or could only do so in a separate lawsuit thereby exposing defendants to a risk of subsequent, inconsistent obligations"); Weber, 110 F. Supp. 2d at 130 ("[T]he Company may bring a separate suit against Defendants on many of the same claims presented here, thus subjecting them to multiple potentially inconsistent verdicts."). Under Rule 19(b)(2), I find there is no way to alleviate this risk of prejudice. Kane's promise not to solicit Mike's Towing's customers is expressly contingent on Bull Dog's performance under the

employment contract, so there is simply no way to resolve the matters at issue in this case without determining whether Bull Dog breached the agreement.

Nor would a judgment rendered in Bull Dog's absence be adequate within the meaning of Rule 19(b)(3). "Adequacy refers to the public stake in settling disputes by wholes, whenever possible." CP Solutions PTE, Ltd. v. G.E. Co., 553 F.3d 156, 160 (2d Cir. 2009) (internal quotation marks and alteration omitted). The same issues that arise in this action are already being litigated in the separate New Jersey action, and they could be litigated again if Bull Dog chose to bring its own suit regarding the solicitation of its customers. Allowing plaintiffs' suit to proceed here regarding only the solicitation of Mike's Towing's customers would not serve the goal of avoiding "piecemeal litigation." Id.

Finally, under Rule 19(b)(4), plaintiffs clearly have an adequate remedy if this action is dismissed. Plaintiffs are free to assert the arguments raised here as defenses and counterclaims in the pending New Jersey suit. Bull Dog is already a party in the state court action, along with all of the parties in this action except for Margaret Mazzio, who presumably could be joined. The state court is "the only forum in which adequate relief can be afforded among all the parties in a single action." Weber, 110 F. Supp. 2d at 130. The availability of a state court forum is a particularly significant factor where, as here, this federal suit is "in its early stage of litigation . . . [and] involves only state law claims, for which a state court can provide a wholly adequate remedy." 2 Montauk Highway LLC v. Global Partners LP, 296 F.R.D. 94, 102 (E.D.N.Y. 2013).

Therefore, I find that under Rule 19(b), this suit cannot proceed without Bull Dog. To the extent that plaintiffs allege that defendant violated the Restrictive Covenant Agreement by soliciting Bull Dog's customers, Bull Dog is an indispensable party because the claims belong to Bull Dog. To the extent that plaintiffs allege that defendant solicited Mike's Towing's

13

customers, Bull Dog is an indispensable party because the claim will necessarily require the court to determine whether Bull Dog breached the employment agreement. Since Bull Dog cannot be joined without depriving the court of diversity jurisdiction, this suit must be dismissed under Rule 12(b)(7), and the parties can litigate all of the related claims in the pending New Jersey state court action.

**II.     Venue**

In the alternative, defendant moves to dismiss under Rule 12(b)(3) for improper venue. I find that, even if all the necessary parties could be joined in this action, the Eastern District of New York would not be the proper venue for this suit.

The employment agreement between Bull Dog and Kane specifies that each party "irrevocably agrees that any action or proceeding concerning or arising out of the interpretation, enforcement and defense of the transactions contemplated by this Agreement . . . shall be commenced exclusively in the courts located in the State of New Jersey." Kane Aff., Ex. C, at 7. In this suit, plaintiffs seek recovery under either the non-solicitation provision of the employment agreement itself or the Restrictive Covenant Agreement, which was executed on the same day and is explicitly contingent on the employment agreement. Under either theory of recovery, this is an action "concerning or arising" out of the employment agreement and falls under its mandatory forum selection clause.

Under New Jersey law, which governs the contract, a forum selection clause "is enforceable unless it results from 'fraud, undue influence, or overweening bargaining power,' is 'unreasonable' or 'violates' a 'strong public policy.'" Delage Landen Fin. Servs., Inc. v. Leighton K. Lee Law Office, 2011 WL 6304226 (N.J. Super. Ct. App. Div. Dec. 19, 2011)

14

(quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-15 (1972)); accord Paradise Enters. Ltd. v. Sapir, 811 A.2d 516, 523 (N.J. Super. Ct. App. Div. 2002) (under New Jersey law, "a forum selection clause is prima facie enforceable"). Plaintiffs make no argument that any of these exceptions apply here. Instead, plaintiffs argue that the venue provision is inapplicable because they are not parties to the employment agreement. Opp'n 15. If Mike's Towing seeks to enforce the non-solicitation provision as a third-party beneficiary to the employment agreement, however, it is bound by the forum-selection clause. See Sahara Sam's Oasis, LLC v. Adams Cos., Inc., Civil Action No. 10-0881 (RMB)/AMD), 2010 WL 3199886, at *6 (D.N.J. Aug. 12, 2010) ("It is widely accepted that non-signatory third parties who are closely related to a contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationships.") (internal quotation marks and alteration omitted); Allgor v. Travelers Ins. Co., 654 A.2d 1375, 1379 (N.J. Super. Ct. App. Div. 1995) ("A third-party beneficiary may accept the benefits of a contract, but is also bound by any burdens or restrictions created by it."); cf. Jansen v. Salomon Smith Barney, Inc., 776 A.2d 816, 820-21 (N.J. Super. Ct. App. Div. 2001) (third-party beneficiary is bound by arbitration clause of contract).[5]

Since the employment agreement's forum selection clause unambiguously grants New Jersey courts exclusive jurisdiction over this action, I find that Rule 12(b)(3) would require the dismissal of this case due to improper venue even if plaintiffs could overcome the inability to join Bull Dog as a party.

---

[5] Plaintiffs also argue that the venue provision in the employment agreement should not apply here because the agreement was terminated when defendant quit his position with Bull Dog on October 4, 2013. Anthony Mazzio Decl. ¶¶ 21-23. Yet the forum selection clause governs all claims "arising out of" the enforcement of the agreement, even after the employment relationship between Kane and Bull Dog has terminated. Indeed, the non-solicitation provision explicitly applies to the two-year period after Kane's employment with Bull Dog has terminated "for any reason," so the obligations in the agreement obviously survive the termination of the employment relationship.

## CONCLUSION

For the foregoing reasons, I conclude that Bull Dog is an indispensable party that cannot be joined in this suit without depriving the court of diversity jurisdiction and that venue is improper in the Eastern District of New York. Accordingly, defendant's motion to dismiss is granted. The complaint is dismissed in its entirety, and the Clerk of Court is directed to close the case.

SO ORDERED.

\_\_/s/_____
Allyne R. Ross
United States District Judge

Dated:     June 24, 2014
           Brooklyn, New York